Clyde R. COMBEE, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

No. 91–786.

United States Court of Veterans Appeals.

Argued July 29 and Nov. 5, 1992.

Decided Jan. 19, 1993.

As Amended March 4, 1993.

Joseph A. Violante, Washington, DC, was on the briefs, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, and R. Randall Campbell, Washington, DC, were on the briefs, for appellee.

Before FARLEY, HOLDAWAY and IVERS, Associate Judges.

FARLEY, Associate Judge:

This appeal presents the issue of whether 38 U.S.C. § 1112 (formerly § 312) and 38 C.F.R. § 3.311b (1991), which provide presumptive service connection for a radiation-exposed veteran who manifests certain disabilities, preclude the establishment of direct service connection based on radiation exposure for diseases not enumerated in the referenced statute and regulation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a U.S. Army veteran who served from December 29, 1944, through December 5, 1946, primarily as a military policeman, with an assignment in Nagasaki, Japan, from September 1945 through October 1945—having arrived one to two weeks after the detonation of the atomic bomb. R. at 120, 127, 131–33. In sworn testimony, appellant related that while stationed in Nagasaki for a period of approximately 10 days, he was engaged in cleanup operations and disarming the Japanese, resided in quarters in the destroyed area, and consumed local food and water. R. at 175–77. It is not disputed that appellant is "considered to have been a radiation-exposed veteran within the meaning of 38 U.S.C. § 312(c) [now § 1112(c)]." *Clyde R. Combee*, BVA 91–01899, at 4 (Jan. 18, 1991).

A report by Louis J. Polskin, Ph.D., M.D., indicates that appellant was treated for eczema since October 25, 1958, and that appellant gave a history of having first contracted eczema while serving in Manila, Philippines, in 1945 before going to Japan. R. at 28. Appellant asserted that his condition was exacerbated by exposure to ionizing radiation in Nagasaki, Japan, and that he received medical treatment for high fever and skin disorders while stationed there. *See* R. at 121, 127, 182. Service medical records indicated that he was treated in 1946 for "scabies" with a sulfa drug, had an allergic reaction to the drug, and was then diagnosed with "acute" dermatitis, "severe, secondary to sulphur ointment used by medical officer ... in treatment of

[scabies]." R. at 18. Lay testimony indicates that appellant had chronic skin problems since discharge, e.g., R. at 30, 35, 37, 41–43, 75–78; he also submitted medical records to document continuing treatment for the skin disorders. *See* R. at 18, 28, 38, 39, 127.

Veterans' Administration (now Department of Veterans Affairs) (VA) medical records of December 1977 reflect an abnormal white blood cell count (WBC) differential of "10 monocytes" (the normal range is listed as 1–6). R. at 103. Reports of laboratory studies and x-rays conducted in July 1982 reveal that appellant's "[p]latelet count was very low at 80,000 (normal 140,-000 to 440,000)" and noted "a low WBC of 4,400 with a leukopenia." R. at 112. (Leukopenia is defined as "a reduction in the circulating WBC count," *see* THE MERCK MANUAL, 15th ed. [hereinafter MERCK], at 1173 (1992).) Appellant was hospitalized in July 1986 with leukopenia and fever. R. at 116. Medical records submitted by appellant indicate continuing treatment for infections related to leukopenia and thrombocytopenia of unknown etiology. R. at 112, 116, 127, 130, 144. (Thrombocytopenia is defined as a disorder which "may stem from failure of platelet production, splenic sequestration of platelets, increased platelet destruction or utilization, or dilution of platelets," *see* MERCK, at 1209.)

Appellant's claim for service connection for residuals of radiation exposure to include a skin condition, high fever, infections, and low white blood count was denied in an April 1, 1987, VA Regional Office (RO) rating decision on the grounds that appellant's asserted maladies—chronic xerosis, herpes, leukopenia of unknown etiology, and thrombocytopenia of unknown etiology—were not considered presumptively service-connected under 38 C.F.R. § 3.311b. R. at 145. (Xerosis is defined as "abnormal dryness, as of the eye, skin, or mouth," *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 27th ed., at 1860 (1988).) The denial was confirmed on September 8, 1987, R. at 151, and a Statement of the Case was provided to appellant on September 16, 1987. R. at 156. On October 6, 1987, appellant perfected an appeal to the Board of Veterans' Appeals (BVA or Board), R. at 196, and a personal hearing took place before the RO on February 5, 1987. R. at 175–89. On March 30, 1988, the RO confirmed the prior denial of service connection for a skin condition and for leukopenia and thrombocytopenia, both claimed as residuals of radiation exposure. R. at 196–97. A Supplemental Statement of the Case was provided to appellant on April 4, 1988. R. at 195–97.

In July 1988, more than forty years after appellant's separation from active service, a VA clinical report disclosed neutropenia, as well as progressive leukopenia, thrombocytopenia, and herpes infections. R. at 201. The clinical report reflected the VA physician's opinion that the only explanation for appellant's medical conditions was exposure to radiation during service. *Id.* Leukemia was not diagnosed at this time. *Id.* In a decision dated October 11, 1988, the Board affirmed the denial of service connection for a skin disorder or leukopenia, finding that "[t]he veteran is not currently shown to have a disorder which is causally or etiologically related to any ionizing radiation he may have been exposed to during his period of military service." *Clyde R. Combee,* BVA 88–12284, at 5–6 (Oct. 11, 1988); R. at 205–06.

A subsequent report, dated December 7, 1989, from Oscar F. Ballester, M.D., Assistant Professor of the Division of Hematology at the James A. Haley VA Hospital in Tampa, Florida, who had been following appellant for the VA Hematology Service for several months, reflected the physician's medical opinion that the veteran's condition may have been due to radiation exposure. R. at 230. The physician rendered a working diagnosis of "Common Variable Hypogammaglobulinemia with associated neutropenia due to bone marrow failure and splenomegaly." *Id.* (Hypogammaglobulinemia is an immunodeficiency disease, "[a] group of diverse conditions caused by one or more immune system defects, and characterized clinically by increased susceptibility to infections with consequent severe, acute, recurrent, and chronic disease." *See* MERCK, at 303, 313.

Neutropenia is defined as "a reduction in the blood neutrophil (granulocyte) count often leading to an increased susceptibility to bacterial and fungal infections." MERCK, at 1173.) Specifically, the physician noted:

As it is well recorded in the literature, exposure to atomic radiation has increased the incidence of several malignancies of the hematopoietic system. It is possible that his exposure to radiation has played a major role in this condition as this prolonged and severe neutropenia now documented for several years with incidence of bone marrow damage and lack of white cell production could be the result of radiation exposure.

*Id.* Further, the physician opined that the veteran's condition could be considered a premalignant or preleukemic stage. R. at 252–53.

Based on these findings, appellant then sought service connection for neutropenia (appellant did not again seek benefits for a skin disorder). In a rating decision dated January 17, 1990, the RO noted that service connection for leukopenia had been denied under 38 C.F.R. § 3.311b and upheld by the Board, and considered appellant's claim to be for "the same condition [as leukopenia but] with [a] new name." R. at 234. The RO denied the reopened claim, concluding that "P[ublic] L[aw] 100–321 does not include either neutropenia or leukopenia as a radiogenic disease." *Id.* Appellant filed a timely Notice of Disagreement with the RO's decision on February 7, 1990. R. at 235. In the Statement of the Case sent to appellant, the RO advised him that the claimed disorder was not shown to have been incurred in or aggravated by military service under 38 U.S.C. §§ 1110 and 1131 (formerly §§ 310 and 331). R. at 238. The RO also informed appellant that neutropenia was not one of the recognized radiogenic diseases listed under the provisions of the Radiation–Exposed Veterans Compensation Act of 1988, Pub.L. No. 100–321, 102 Stat. 485 (1988), codified at 38 U.S.C. § 1112(c). *Id.*

The denial was confirmed by the RO on August 7, 1990 (R. at 249), and affirmed by the BVA in the decision on appeal on Janu-

ary 18, 1991. *Combee,* BVA 91–01899, at 5–6. The BVA relied on the direct service connection provisions of 38 U.S.C. § 1110, and noted that the appellant's service medical records did not show any sign of bone marrow dysfunction or radiation illness or other signs of neutropenia until July 1988. *Id.* at 4. The BVA also found no evidence that the veteran suffered from leukemia or a malignancy for which presumptive service connection would be warranted under the provisions of Pub.L. No. 100–321, and that neutropenia is not a disease entitled to presumptive service connection. *Id.* at 5.

On May 8, 1991, appellant perfected an appeal to this Court. Appellant, through his representative, filed a brief in support of his appeal on October 11, 1991, and the Secretary of Veterans Affairs (Secretary) filed a brief on November 27, 1991. On December 16, 1991, appellant filed a reply brief. Oral argument was held before this Court on July 29, 1992, at which time the Court ordered further briefing on the central issue in this case: whether direct service connection may be established based on radiation exposure for a disorder which is not specifically enumerated in the list of radiogenic diseases in 38 C.F.R. § 3.311b(b)(2). Pursuant to the Court's order, the Secretary filed a Supplemental Brief on August 28, 1992, and appellant filed his Supplemental Brief on September 30, 1992. A second oral argument was held before this Court on November 5, 1992.

## II. THE STATUTES AND REGULATIONS

Resolution of appellant's claim requires this Court to address several statutes and regulations related to the issue of whether a veteran is precluded from establishing service connection on a direct basis, based solely upon exposure to ionizing radiation, for a disease not recognized as a "radiogenic disease" under 38 U.S.C. § 1112(c) (formerly § 312(c)) or 38 C.F.R. § 3.311b(b)(2). Section 7261(a)(3)(C) (formerly § 4061(a)(3)(C)) of title 38 of the United States Code requires the Court to "hold unlawful and set aside ... rules and regulations issued or adopted by the [Secretary]

... found to be ... in excess of statutory jurisdiction, authority, ... or in violation of a statutory right." Determining whether any of the provisions of the VA's regulations, concerning service connection for radiation exposure-based claims, should be set aside as violative of statutory authority involves examining the exact language of the pertinent statutes and regulations related to radiation exposure-based claims and the interpretation given to the statutes and regulations by their administering agency—the VA. *Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) (citing *Brock v. Writer's Guild of America West, Inc.,* 762 F.2d 1349, 1353 (9th Cir.1985)).

### A. Service Connection on a Direct Basis

■ The establishment of direct service connection is governed by 38 U.S.C. § 1110, which provides:

> For disability *resulting from* personal injury or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

*Id.* (emphasis added). In determining whether an injury or disease was incurred or aggravated during active service, the Secretary is directed, by statute, to afford due consideration to the time, place, and circumstances of service. 38 U.S.C. § 1154 (formerly § 354). Specifically, § 1154(a) provides:

> The Secretary shall include in the regulations pertaining to service-connection of disabilities (1) additional provisions in effect requiring that in each case where a veteran is seeking service-connection for any disability due consideration shall be given to the places, types, and circum-

stances of such veteran's service as shown by such veteran's service record, the official history of each organization in which such veteran served, such veteran's medical records, and all pertinent lay evidence.

Implementing the statutory provisions of § 1110 and § 1154, the Secretary has issued a regulation which provides:

> Service connection connotes many factors but basically it means that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. This may be accomplished by affirmatively showing inception or aggravation during service or through the application of statutory presumptions. Each disabling condition shown by a veteran's service records, or for which he seeks a service connection must be considered on the basis of the places, types and circumstances of this service as shown by service records, the official history of each organization in which he served, his medical records and all pertinent medical and lay evidence. Determinations as to service connection will be based on a review of the entire evidence of record, with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts of each individual case.

38 C.F.R. § 3.303(a) (1991). Additionally, 38 C.F.R. § 3.303(d) provides:

> Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.

■ Accordingly, pursuant to the language of 38 U.S.C. §§ 1110 and 1154 and 38 C.F.R. § 3.303, in order to establish direct service connection, a veteran is required to demonstrate that the injury or disease either was incurred or aggravated during active service. In so doing, the veteran either may affirmatively, through the introduction of supporting evidence in the record, establish that his disability was incurred or aggravated during service or may make such a showing through the application of certain statutory presumptions, discussed in more detail below.

### B. Veteran's Dioxin and Radiation Exposure Compensation Standards Act

Congress recognized that pursuant to the aforementioned statutory and regulatory provisions, a veteran seeking disability benefits was faced with a difficult task in attempting to establish direct service connection for a claim based on alleged exposure to ionizing radiation, where the physical manifestations might not surface until many years after the initial exposure. 130 Cong.Rec. S13147–50 (May 22, 1984) (remarks of Senator Cranston); 130 Cong.Rec. H29550 (Oct. 3, 1984) (remarks of Rep. Hammerschmidt).

Reacting to the difficulty in establishing causation based on alleged radiation exposure and the significantly small number of claims for service connection which had been allowed based on such exposure, Congress enacted in 1984 the Veteran's Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984) ("the Act"). Congress decided that there was enough of a statistical association between exposure to radiation and the manifestation of certain diseases such that those diseases should be recognized as "radiogenic." Accordingly, a stated purpose of the Act is:

> to ensure that VA disability compensation is provided to veterans who were exposed to ionizing radiation in connection with atmospheric nuclear tests or in connection with American occupation of Hiroshima or Nagasaki, Japan, for all disabilities arising after that service that are connected, based on sound scientific and medical evidence, to such service (and that VA dependence and indemnity compensation is provided to survivors of those veterans for all deaths resulting from such disabilities).

*Id.*, sec. 3.

The Act delineates specific findings underlying the new legislation. First, it is noted that, while many veterans who participated in atmospheric nuclear testing or the American occupation of Hiroshima or Nagasaki, Japan, are deeply concerned about possible long-term health effects of exposure to ionizing radiation, *Id.*, sec. 2(1), there is a great deal of scientific and medical uncertainty regarding such long-term adverse health effects. *Id.*, sec. 2(2). Pursuant to the Act, Congress responded to this medical uncertainty by (1) assuring that priority medical care would be provided at VA facilities for veterans who were exposed to radiation and developed one of the listed radiogenic diseases, unless the disability was found to have a cause other than radiation exposure (*Id.*, sec. 2(3)); (2) requiring that thorough epidemiological studies would be conducted of the health effects experienced by radiation-exposed veterans (*Id.*, sec. 2(4)); and (3) requiring the development of radioepidemiological tables to track the probabilities of causation between various disabilities and radiation exposure (*Id.*). Congress found that there is sufficient evidence that certain specific disabilities are linked to exposure to ionizing radiation; these disabilities include most types of leukemia; malignancies of the thyroid, female breast, lung, bone, liver, and skin; and polycythemia vera. *Id.*, sec. 2(5).

It also was noted that the "film badges" which had been provided to members of the military in connection with atmospheric nuclear testing, and which had been the primary sources of dose information for veterans filing claims for disability compensation based on alleged exposure, often provided incomplete and inaccurate information and were not provided to most of the participants in nuclear testings. *Id.*, sec. 2(8), (9). Additionally, it was noted that the

standards governing the reporting of dose information varied among the separate branches of the Armed Forces, and the VA had not promulgated permanent regulations setting criteria, standards, and guidelines for the adjudication of claims for disability compensation based on exposure either to herbicides containing dioxin or to ionizing radiation. *Id.*, sec. 2(10), (11). Congress also recognized that radiation-based claims often involve long latency periods and present unique adjudicatory issues unlike those presented in non-radiation-based claims. *Id.*, sec. 2(12). Finally, Congress took notice of the fact that in considering all of the evidence and material of record in support of a given claim for service connection, it has always been the policy of both the United States and the VA that the benefit of the doubt shall be provided to the veteran on each issue material to the determination of a given claim. *Id.*, sec. 2(13).

In 1984, pursuant to the Act, a new subsection (a)(2) was added to 38 U.S.C. § 1154 which compelled the Secretary to promulgate regulations pertaining to service connection of disabilities in accordance with "the provisions required by section 5 of the ... Act." 38 U.S.C. § 1154(a)(2). Section 5 of the Act, in turn, provided the Secretary with specific directions on the requirements for and content of the new regulations dealing with radiation exposure-based claims. To promote consistency in claims processing and decisions, the Secretary was directed to prescribe regulations to (1) establish guidelines and (where appropriate) standards and criteria for the resolution of claims based on a veteran's exposure during service to ionizing radiation (*Id.*, sec. 5(a)(1)) and (2) ensure the appropriate application of the reasonable doubt doctrine to a veteran's radiation-based claim (*Id.*, sec. 5(a)(2)).

The Secretary also was directed to include guidelines governing the evaluation of scientific studies relating to the possible increased risk of adverse health effects of exposure to ionizing radiation. *Id.*, sec. 5(b)(1)(A). Such evaluations were required to be made by the Secretary after advice from the Scientific Council of the Veterans'

Advisory Committee on Environmental Hazards (the "Advisory Committee")—a specially constituted advisory panel of experts—and the results of these evaluations were required to be published in the Federal Register. *Id.*, sec. 5(b)(1)(B) and sec. 6. The Secretary also was directed to include provisions governing the use of such evaluations in the adjudication of individual claims. *Id.*, sec. 5(b)(1)(C). Additionally, in prescribing the new regulations under this section, the Secretary was required to make determinations, based on sound scientific evidence with respect to each alleged radiation-based disease, as to whether service connection should be granted in the adjudication of individual cases. *Id.*, sec. 5(b)(2)(A)(i). Further, the Secretary was required to include in the regulations provisions specifying the factors to be considered in adjudicating issues relating to whether or not service connection should be granted in individual cases and specifying the circumstances governing the granting of service connection for such diseases. *Id.* It was specifically noted, however, that the diseases referred to in section 5 of the Act included only those specified in section 2(5) of the Act, i.e., most types of leukemia, malignancies of the thyroid, female breast, lung, bone, liver, and skin, and polycythemia vera, and any other disease with respect to which the Secretary subsequently determined (after receiving and considering the advice of the Advisory Committee) that there existed sound scientific or medical evidence indicating a connection between the disease and exposure to ionizing radiation. *Id.*, sec. 5(b)(2)(B).

C. Secretary's Regulation on Issues Related to Claims Based on Radiation Exposure—38 C.F.R. § 3.311b

In 1985, pursuant to the requirements outlined in the Act, the Secretary promulgated, after public review and comment, a detailed regulation, enumerated at 38 C.F.R. § 3.311b (1991), governing the establishment of service connection for disabilities allegedly resulting from exposure to ionizing radiation. Under the provisions of 38 C.F.R. § 3.311b(b)(1)(i)-(iii), a veteran must meet certain threshold requirements

in order to establish a well-grounded claim for service connection based on exposure to ionizing radiation and before the claim will be referred to the Chief Benefits Director for further consideration, including: (a) the veteran must have been exposed to ionizing radiation in service; (b) the veteran must have subsequently developed one of the radiogenic diseases listed in 38 C.F.R. § 3.311b(b)(2); and (3) the disease must have become manifest within the latency period specified in 38 C.F.R. § 3.311b(b)(4). The regulation specifically provides: "If any of the foregoing 3 requirements [have] not been met, it shall not be determined that a disease has resulted from exposure to ionizing radiation under such circumstances." 38 C.F.R. § 3.311b(b)(1)(iii). The regulation also provides specific guidelines concerning dose and exposure assessments for the recognized radiogenic diseases (§ 3.311b(a)(1)), guides the veteran to the specific sources of dose information for particular recognized radiogenic diseases depending on the alleged source of exposure (§ 3.311b(a)(2)), and provides for the referral of dose assessments to independent experts to reconcile any disputes (§ 3.311b(a)(3)).

Based on specific recommendations of the Advisory Committee and scientific and medical evidence, the VA adopted a list of recognized "radiogenic diseases," enumerated at 38 C.F.R. § 3.311b(b)(2). The regulation indicates that the list is exclusive; the specific language of the regulation provides that:

For purposes of paragraphs (a)(1) (regarding dose assessments) and (b)(1) (listing three requirements for a well-grounded claim) of this section, "radiogenic diseases" shall only include the following:

(i) All forms of leukemia except chronic lymphatic (lymphocytic) leukemia;

(ii) Thyroid cancer;

(iii) Breast cancer;

(iv) Lung cancer;

(v) Bone cancer;

(vi) Liver cancer;

(vii) Skin cancer;

(viii) Esophageal cancer;

(ix) Stomach cancer;

(x) Colon cancer;

(xi) Pancreatic cancer;

(xii) Kidney cancer;

(xiii) Urinary bladder cancer;

(xiv) Salivary gland cancer;

(xv) Multiple myeloma;

(xvi) Posterior subcapsular cataracts; and

(xvii) Non-malignant thyroid nodular disease.

*Id.* Neutropenia (or leukopenia) is not included in the list of radiogenic diseases.

The regulation specifically excludes certain disabilities from the list of radiogenic diseases. *See* 38 C.F.R. § 3.311b(b)(3) (excluding polycythemia vera from list of radiogenic diseases). The regulation also specifies time periods within which the recognized radiogenic diseases must become manifest in order for a veteran to establish service connection.

... (i) Bone cancer must become manifest within 30 years after exposure; (ii) Leukemia must become manifest at any time after exposure; (iii) Posterior subcapsular cataracts must become manifest 6 months or more after exposure; and (iv) Other diseases specified in paragraph (b)(2) of this section must become manifest 5 years or more after exposure.

38 C.F.R. § 3.311b(b)(4).

The Secretary will amend the list of recognized radiogenic diseases when it is found that there is a significant statistical association between specific diseases and exposure to ionizing radiation. 38 C.F.R. § 1.17(c). Accordingly, over the years, based on advice provided to the Secretary by the Advisory Committee resulting from expanded scientific and medical knowledge, and after public review and comment, the Secretary has proposed various amendments to the list of radiogenic diseases. *See, e.g.,* 57 Fed.Reg. 10,853 (1992) (proposing to add parathyroid adenoma); 54 Fed. Reg. 42,802 (1989) (proposing to add lymphomas, except Hodgkin's disease, and cancers of the pharynx, small intestine, bile ducts, and gall bladder so as to conform the radiogenic diseases listed in 38 C.F.R.

§ 3.311b with those listed in § 3.309, *see infra*). Neutropenia (or leukopenia), however, has not been added to the list of radiogenic diseases.

However, although the language of 38 C.F.R. § 3.311b(b)(2) indicates that, for the purposes of establishing service connection based on exposure to ionizing radiation, the list of radiogenic diseases specified in the regulation is exclusive, the provision also refers the veteran to another subsection of the regulation—38 C.F.R. § 3.311b(h). Subsection (h), under the heading, "service connection otherwise established," provides:

> Nothing in this section will be construed to prevent the establishment of service connection for any injury or disease otherwise shown by sound scientific or medical evidence to have been incurred or aggravated during active service.

 From the exact wording of subsection (h), it is unclear whether or not a veteran may still establish, on the ground of exposure to ionizing radiation, direct service connection for a disease not enumerated in the list of radiogenic diseases. The VA, however, has published a proposed regulation in order to "clarify when service connection can be established based upon exposure to ionizing radiation." 57 Fed. Reg. 10,450 (1992).

> The list of radiogenic conditions that appears at 3.311b(b)(2) is meant to be exclusive. The current wording of 3.311b(h) however, might be misinterpreted to mean that a veteran may attempt to prove that a disease not included on that exclusive listing resulted from exposure to ionizing radiation and is service connected based on "sound scientific or medical evidence." This interpretation of 3.311b(h) would not conform to section 5(b)(2) of Public Law 98–542 which contemplates that VA will employ regulations which list each disease for which VA finds sound scientific and medical evidence of a connection of ionizing radiation.

*Id.* Therefore, by the terms of the proposed regulation, a veteran will be completely foreclosed from establishing service connection on a direct basis, based solely on exposure to ionizing radiation, if the disability is not specifically listed as a recognized "radiogenic disease" under 38 C.F.R. § 3.311b(b)(2).

### D. Presumptions of Service Connection Under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309

In 1988, pursuant to the Radiation–Exposed Veterans Compensation Act of 1988, *supra*, Congress added subsection (c) to 38 U.S.C. § 1112 (implemented by 38 C.F.R. § 3.309). Section 1112(c)(1) provides for a presumption of service connection for certain diseases which become manifest in a radiation-exposed veteran within specified latency periods. It states in part:

> ... [A] disease specified in paragraph (2) of this subsection becoming manifest in a radiation-exposed veteran to a degree of 10 percent or more within the presumptive period (as specified in paragraph (3) of this subsection) shall be considered to have been incurred in or aggravated during active military, naval, or air service, notwithstanding that there is no record of evidence of such disease during a period of such service.

Section 1112(c)(2) outlines the specific diseases for which the presumption of service connection will apply; these diseases are:

(A) Leukemia (other than chronic lymphocytic leukemia).

(B) Cancer of the thyroid.

(C) Cancer of the breast.

(D) Cancer of the pharynx.

(E) Cancer of the esophagus.

(F) Cancer of the stomach.

(G) Cancer of the small intestine.

(H) Cancer of the pancreas.

(I) Multiple myeloma.

(J) Lymphomas (except Hodgkin's disease).

(K) Cancer of the bile ducts.

(L) Cancer of the gall bladder.

(M) Primary liver cancer (except if cirrhosis or hepatitis B is indicated).

Neutropenia (or leukopenia) is not included among the recognized diseases for which

the presumption of service connection will apply under § 1112(c). *Id.* The statute and implementing regulation provide that the presumption period for the listed diseases is the 40–year period beginning on the last date on which the veteran participated in a defined radiation-risk activity. 38 U.S.C. § 1112(c)(3). The defined "radiation risk-activities" for purposes of the aforementioned presumptions specifically include the occupation of Hiroshima or Nagasaki, Japan, by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946. 38 U.S.C. § 1112(c)(4)(B)(2).

The *Veterans' Radiation Exposure Amendments of 1992* (the 1992 Amendments), 106 Stat. 4774, Pub.L. No. 102–578 (S. 775) (Oct. 30, 1992), amended § 1112(c)(2) by including new subparagraphs "(N) Cancer of the salivary gland" and "(O) Cancer of the urinary tract" in the list of radiogenic diseases. The 1992 Amendments also amended § 1112(c)(1) by striking out the requirement that the diseases in § 1112(c)(2) become manifest in a radiation-exposed veteran to a degree of 10% or more within the presumption period. The 1992 Amendments also removed former § 1112(c)(3), i.e., the requirement that any disease presumed to be service-connected for radiation-exposed veterans be manifested within 40 years after exposure. Further, the 1992 Amendments required the Advisory Committee to investigate the effects of radiation exposure from military activities not covered by current law, and directed the Advisory Committee to review pertinent scientific data to determine whether bronchio-alveolar carcinoma should be added to the list of radiogenic diseases.

## III. POSITIONS OF THE PARTIES

Appellant asserts that following the denial of his claim by the RO in April 1987 for service connection for residuals of exposure to ionizing radiation during World War II, he submitted additional medical evidence from two physicians, Drs. Ballester and Berchelmann, both of whom opined that a reasonable relationship exists between appellant's in-service exposure to ionizing radiation and his current disabilities which have been diagnosed at different times as leukopenia and neutropenia. Appellant's Br. at 8–9. He asserts, however, that in adjudicating his claim for service connection based on radiation exposure, the BVA erred by considering only the presumption provisions of 38 U.S.C. § 1112(c), as implemented by 38 C.F.R. § 3.309, without addressing his claim on a direct basis. *Id.* at 9; *see also* Appellant's Reply Br. at 2–3; Appellant's Supp. Br. at 2–16. He contends that the submitted evidence is "sufficient to justify a belief in a fair and impartial individual that the claim is well-grounded (citing 38 U.S.C. § 5107(a) (formerly § 3007(a)))," and is relevant and probative because it demonstrates a nexus between his disability and his in-service radiation exposure. Appellant's Br. at 9. He further asserts that although his earlier claim had been denied by the Board under the provisions of 38 C.F.R. § 3.311b on the grounds that it was not one of the recognized radiogenic diseases, the Board failed to give consideration to the provisions of § 3.311b(h). *Id.; see also* Appellant's Supp. Br. at 13–16.

Appellant argues that the statutory presumptions are intended to be used when service connection cannot otherwise be established and are not intended to limit the ability of the veteran to otherwise establish service connection on a direct basis. Appellant's Br. at 13. Accordingly, he contends that, in both its October 1988 and January 1991 decisions, the Board applied the laws and regulations in an exclusive manner and used the presumption provisions to ignore his well-grounded claim for direct service connection. *Id.* He questions whether the Board determined that consideration of his claim on a direct basis was unwarranted because there are no service medical records to relate his in-service health problems with his currently diagnosed diseases, and asserts that, under such a line of reasoning, there would be no means to establish service connection for any type of disability subsequent to the presumption periods contained in 38 C.F.R. §§ 3.307, 3.309, 3.311. *Id.* He also states

that such reasoning would directly conflict with the requirements of 38 C.F.R. § 3.303(a) and (d) (requiring the Secretary to afford consideration to the time, place, and circumstances of service and to apply presumption provisions so as not to limit direct service connection when the evidence so warrants), and that a veteran has not been precluded from establishing direct service connection for many other disabilities which manifest many years after actual service, including asbestosis, post-traumatic stress disorder (PTSD), and Agent Orange-related disabilities. *Id.* at 14.

The Secretary's position is that absent evidence of the disease (neutropenia) in service, direct service connection may not be established based on alleged radiation exposure for a non-radiogenic disease, i.e., a disorder not enumerated in the exclusive list of radiogenic diseases set forth at 38 C.F.R. § 3.311b(b)(2). Secretary's Supp. Br. at 2. Further, the Secretary asserts that the provisions of 38 C.F.R. § 3.311b(h) do not afford appellant an alternative basis for establishing direct service connection for neutropenia on the basis that the disease is the product of exposure to radiation during active service. *Id.* Instead, the Secretary contends that subsection (h) merely preserves the traditional means of proving service connection based upon causation other than radiation, i.e., direct service connection under 38 C.F.R. §§ 3.303, 3.304, or presumptive service connection under § 3.307, without regard to the veteran's alleged radiation exposure. Appellee's Supp. Br. at 11.

The Secretary asserts that any other construction of 38 C.F.R. § 3.311b(h) would not be consistent with the language of § 3.311b(b)(1)(iii) and (b)(2)—specifying an exclusive list of diseases determined to be radiogenic. *Id.* at 11. The Secretary submits that "[a]ppellant's interpretation of subsection (h) would essentially render the special adjudicatory framework of 38 C.F.R. § 3.311b a nullity and derogate from Congress' goal of promoting uniform standards and consistency in claims processing and decisions based upon radiation exposure." *Id.* (citing to the Act, sec. 5(b)(2)(A) and (B)). In support of his position, the Secretary notes that the VA's General Counsel, in legal opinions that are binding upon the VA, under 38 C.F.R. §§ 2.6(e)(9), 14.507, and 19.5, has specifically determined that the list of recognized radiogenic diseases is exclusive. *Id.* at 6 (citing *O.G.C. Prec.* 69–90 (July 18, 1990); *O.G.C. Undigested Opinion* (Feb. 20, 1987)). The Secretary notes that, contrary to appellant's contentions in his briefs, the Board, in its January 1991 decision, expressly evaluated appellant's claim for service connection for neutropenia on a direct basis under the relevant statutory provisions. Secretary's Br. at 7–8. The Secretary asserts, however, that the Board found that the requirements for direct service connection had not been met since the evidence of record does not indicate that appellant's neutropenia was incurred or aggravated during active service. *Id.*

The Secretary submits that in order for a veteran to establish service connection for a disability manifested many years after service, based on alleged exposure to radiation in service, the veteran has only two options: (1) under Pub.L. 100–321, as codified at 38 U.S.C. § 1112(c) and implemented by 38 C.F.R. § 3.309, the evidence must show that the veteran was a participant in a radiation-risk activity and manifested one of the specifically enumerated radiogenic diseases to a degree of 10% or more within the applicable presumption period, *Id.* at 8; or (2) under 38 C.F.R. § 3.311b, if the evidence shows that the veteran was exposed to ionizing radiation during active service and manifested one of the specifically enumerated radiogenic diseases within the applicable latency period, a determination must be made as to whether such radiogenic disease was directly due to service, based on such factors as the probable dosage and nature of exposure, the sensitivity of the organs affected, and the veteran's personal and family data. *Id.* The Secretary concedes that while the two aforementioned means of establishing service connection for radiation-based claims do not foreclose the establishment of direct service connection under the applicable statutory and regulatory scheme, the involvement of the al-

leged radiation exposure becomes irrelevant under that inquiry, and the veteran is required to establish that the disease either had its inception or was aggravated during active service or within one year of separation from service without reference to the alleged exposure. *Id.* at 8–9.

Further, the Secretary submits that the addition of any disease, including neutropenia, to the list of radiogenic diseases is a legislative, not a judicial task. *Id.* at 11. Finally, the Secretary contends that because service connection may not be established based on alleged radiation exposure if the disability is not one of the specifically recognized radiogenic diseases under 38 C.F.R. § 3.311b(b)(2), the Board's failure to discuss the applicability of this regulation in its January 1991 decision did not harm appellant and does not constitute reversible error. *Id.* at 14–15.

## IV. ANALYSIS

Section 501(a) of title 38 of the United States Code authorizes the Secretary to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the [VA] and are consistent with those laws." 38 U.S.C. § 501(a). The Secretary urges the Court to defer to the VA's interpretation of § 3.311b, citing to the principle that the construction of a regulation by the agency which promulgated it and is charged with administering it is entitled to substantial deference. Secretary's Supp. Br. at 6–7 (citing *United States v. Rutherford*, 442 U.S. 544, 554, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979); *Ipsco, Inc. v. United States*, 899 F.2d 1192, 1194 (Fed.Cir.1990); *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984); *Ganse v. United States*, 376 F.2d 900, 904 (Ct.Cl. 1967)). However, section 7261(a)(3)(C) requires the Court to "hold unlawful and set aside ... rules and regulations issued or adopted by the [Secretary] ... found to be ... in excess of statutory jurisdiction, authority, ... or in violation of a statutory right."

■ In determining whether to accept or reject the VA's interpretation of the stat-

utes and regulations governing claims arising out of alleged exposure to radiation, the Court first must examine the language of the relevant statutes and regulations and determine whether the statutory and regulatory language is plain and the meaning clear, leaving neither room for construction, nor need for interpretation. *See Gardner*, 1 Vet.App. at 587–88. If the pertinent statutes and regulations are not clear from their plain language, the Court must then focus on the interpretation put on the pertinent statutes and regulations by the agency administering them, here the VA, and determine whether the VA's interpretation conforms to the wording and the purpose of the statutes and regulations. *See Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31, 102 S.Ct. 38, 41, 70 L.Ed.2d 23 (1981). *See also Gardner*, 1 Vet.App. at 588.

### A. Statutory and Regulatory Language

■ Determining the plain meaning of a statute requires an examination of the specific language at issue and the overall structure of the statute. *Gardner*, 1 Vet. App. at 586 (citing *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988)). "Where a statute's language is plain, and its meaning clear, no room exists for construction. There is nothing to construe." *Gardner*, 1 Vet.App. at 588 (citing *Lewis v. United States*, 92 U.S. (2 Otto) 618, 23 L.Ed. 513 (1876)).

Here, the language of 38 U.S.C. § 1110 indicates that a veteran is entitled to service connection for a disability resulting from a personal injury or disease contracted in the line of duty, or for the aggravation of a preexisting injury suffered or disease contracted in the line of duty. By means of 38 U.S.C. § 1154, Congress compelled the Secretary to promulgate regulations to ensure that, in determining whether service connection is warranted, the places, types, and circumstances of each veteran's service, including the requirements set forth in section 5 of the Act, be taken into account. Section 3.303(a), which

implements the statutory requirements of 38 U.S.C. §§ 1110 and 1154, enables the veteran to establish service connection either by affirmatively showing inception or aggravation of an injury or disease during active service, or through the application of statutory presumptions. Section 3.303(d) provides that the presumption periods are not intended to limit the establishment of direct service connection for diseases incurred in service when the evidence warrants such direct service connection. Section 3.311b(b) of the regulations, however, indicates that the list of radiogenic diseases is exclusive, i.e., that a veteran may only establish service connection based on radiation exposure if the veteran's disability has been specifically designated as a "radiogenic disease" by the Secretary with the advice of the Advisory Committee. Section 3.311b(h) of the regulations, in turn, indicates that a veteran is not foreclosed from establishing service connection for any injury or disease otherwise shown by scientific and medical evidence to have been incurred or aggravated during active service.

■ After reviewing the pertinent statutes and regulations dealing with service connection based on radiation exposure, the Court finds that the meaning of 38 U.S.C. §§ 1110 and 1154 and the provisions of subsections (b) and (h) in 38 C.F.R. § 3.311b is not clear from the plain language of the statutes and regulations with respect to the exclusivity of the listed conditions. The situation here is unlike the situation faced by this Court in *Gardner, supra,* where it was determined that the plain meaning of the statute was clear from its language and that the VA's regulation was inconsistent with that plain meaning. Therefore, the Court must analyze the interpretation of the pertinent statutes and regulations by the VA, and determine whether the VA's interpretation conforms to the purpose and wording of the applicable statutes and regulations. *See Federal Election Comm'n,* 454 U.S. at 31, 102 S.Ct. at 41; *Gardner,* 1 Vet.App. at 588.

### B. Administrative Agency's Interpretation

■ As the Secretary asserts, an administrative agency's interpretation of an applicable statute or regulation, particularly where the statute or regulation is unclear, may be entitled to deference. *See, e.g., Federal Election Comm'n,* 454 U.S. at 31, 102 S.Ct. at 41; *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, ——, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991) (quoting *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) and *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)); *United States v. Jackson,* 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361 (1930); *Gardner,* 1 Vet.App. at 588. The United States Supreme Court has held that "[i]n situations in which 'the meaning of [regulatory] language is not free from doubt,' the reviewing court should give effect to the agency's interpretation so long as it is 'reasonable,'" *Martin,* 499 U.S. at ——, 111 S.Ct. at 1175 (citing *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971)), "that is, so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations,'" *Id.* 499 U.S. at ——, 111 S.Ct. at 1175–76 (citing *Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 173, 46 L.Ed.2d 156 (1975)). The Supreme Court also has held that "[b]ecause applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers." *Id.* (citing *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980)).

■ However, courts are not bound by an administrative agency's interpretation of a statute or regulation and must reject such construction if it is in variance with statutory mandate or Congressional intent. *Federal Election Comm'n,* 454 U.S. at 30, 102 S.Ct. at 41. *See also Northern*

*Indiana Pub. Serv. Co.,* 423 U.S. at 15, 96 S.Ct. at 173, *Gardner,* 1 Vet.App. at 588. In *Federal Election Comm'n,* the Supreme Court noted:

> The interpretation put on the statute by the agency charged with administering it is entitled to deference ... but the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.

454 U.S. at 31–32, 102 S.Ct. at 42.

The VA has determined that the list of "radiogenic diseases" enumerated at 38 C.F.R. § 3.311b(b)(2) is exclusive. *See, e.g., O.G.C. Prec. 69–90, supra; O.G.C. Undigested Opinion, supra.* In a case involving similar facts to the matter at hand, the BVA was faced with adjudicating a veteran's claim for disability compensation for hypothyroidism, allegedly incurred as a result of exposure to ionizing radiation related to the veteran's participation in a 1956 nuclear weapon test series. *O.G.C. Prec. 69–90,* at 1. The RO denied the veteran's claim on the grounds that his alleged hypothyroidism was not shown prior to 1983 and that radiation exposure in service was not shown to be a causative factor in its development. *Id.* In a February 1987 BVA decision, the Board granted service connection for hypothyroidism under the basic entitlement provisions of 38 U.S.C. § 1131 (formerly § 331) and the doctrine of reasonable doubt enumerated at 38 C.F.R. § 3.102. *Id.* However, in its decision, the Board acknowledged that new adjudication procedures had been adopted by the VA during the pendency of the appeal, i.e., 38 C.F.R. § 3.311b, but declined to apply those provisions because the veteran's claim had been neither developed nor adjudicated initially under the new provisions. *Id.* at 2. Determining that the criteria set forth in 38 C.F.R. § 3.311b are properly to be applied to any decision rendered by the Board after adoption of the new regulation, notwithstanding that the appeal may have been pending before the regulation became effective, the VA General Counsel noted as follows:

> Pursuant to the requirements of the [Act], the VA conducted rulemaking and adopted 38 C.F.R. § 3.311b governing the adjudication of all compensation claims based on the disabilities or deaths of veterans who were exposed to ionizing radiation in connection with the American occupation of Hiroshima and Nagasaki or atmospheric testing of nuclear weapons. The final regulation, which took effect on September 25, 1985, prescribes specific steps for the development and disposition of radiation claims. Subsection (b)(2) sets forth certain radiogenic diseases for which service connection may be established. The list of radiogenic diseases was developed by the Agency after exhaustive review of published studies and investigations, consideration of public comments to the proposed rules, and consultation with the [Advisory Committee]. It represents the Agency's assessment of all diseases that are shown by sound medical and scientific evidence to be epidemiologically related to ionizing radiation exposure. *See* 50 Fed.Reg. 15850 (Apr. 22, 1985). The list is exclusive, Undigested Opinion, [Feb. 20, 1987] ... and does not include hypothyroidism. [We note that, in the compromise agreement upon which the Act is based, Congress specifically deleted hypothyroidism from consideration as a radiogenic disease. *See* 130 Cong.Rec. H11162 (Oct. 3, 1984).] Therefore, to the extent 38 C.F.R. § 3.311b applies to a compensation claim pending administratively on the effective date of the regulation, service connection for hypothyroidism caused by radiation exposure would be unauthorized by law.

*O.G.C. Prec. 69–90,* at 2. Thus, the VA interprets § 3.311b to prevent a veteran from establishing direct service connection based on alleged radiation exposure for a disease not recognized as "radiogenic" under § 3.311b(b)(2). The Court must now determine whether the administrative agency's interpretation is "reasonable," i.e., whether it "sensibly conforms to the pur-

pose and wording of the regulations," through an examination of the applicable legislative history. *See Martin, supra.*

### C. Legislative History

The Act, pursuant to which 38 C.F.R. § 3.311b was implemented, was based upon two bills, a Senate version, S.1651, 98th Cong., 1st Sess. (1983), and a House version, H.R.1961, 98th Cong., 2d Sess. (1984). In his remarks to Congress, Rep. Hammerschmidt noted the differences between the House and Senate versions:

... [T]he House passed H.R.1961.... The bill would have paid compensation to veterans on a presumptive basis for ... three types of disabilities with respect to exposure to atomic radiation.... The disabilities involved some speculation and were based on a desire to go the extra mile for these veterans even though actual scientific evidence did not exist as to a real relationship between exposure and the disabling conditions.... It was clear that we were passing it as a sign of our positive concern to do the right thing by the veterans involved.

The other body ... wanted to establish in law a highly specialized committee to advise the Administrator of Veterans Affairs on these complex issues and it wanted to have judicial review of claims of veterans on ... radiation exposure with respect to the establishment of guidelines and regulations.

... [T]he House and Senate were far apart but we have arrived at a reasonable compromise. The House would recede from its position with respect to four of the six disabilities. It would accept the Senate position of the guidelines and the advisory group. The Senate would recede from its position on judicial review. Both bodies would then await the results of the scientific studies, and in the interim both would expect a very positive attitude by the VA....

130 Cong.Rec. H29550 (Oct. 3, 1984). Despite the Senate and House bills' procedural differences, they both had a similar goal—to address the problems faced by veterans seeking service connection for residuals of exposure to ionizing radiation and Agent Orange because of the medical and scientific uncertainty surrounding such claims.

In discussing the problems faced by veterans seeking such radiation exposure-based service connection, Senator Cranston stated:

I found that these veterans and their survivors face an inordinately lengthy claims process in which claims reaching the [BVA] were frequently remanded, ... and that documentation of the service member's participation in weapons testing was frequently difficult to obtain, not obtained as a matter of standard procedure, or was classified. In addition, claims decisions made by the VA were often inconsistent with each other, and no orderly procedure or guidance existed to assist in gathering and evaluating the complex factors which can come to bear on these cases. Finally, ... few claims were granted at all on the basis of exposure to ionizing radiation.

130 Cong.Rec. S13147 (May 22, 1984). In discussing the basic purpose of the bill, Senator Cranston noted:

[T]he basic impact of [the bill] is to require the VA, through a rulemaking process allowing for public participation to develop binding regulations for the adjudication of agent orange and radiation claims in order to bring about consistency in the process and the results. In developing the regulations, the Administrator would be required to address specifically whether—based on medical and scientific evidence and resolving reasonable doubt in the claimant's favor—any presumptions as to service connection should be applied in the case of certain specified disabilities.... These disabilities are ones as to which current scientific information provides a basis for a possible connection between the exposure and the disease. The Administrator's compliance with the required process, as well as any regulations issued by the Administrator, would be subject to challenge in Federal court, thereby providing an independent check on the results of the process.

In addition to requiring the administrator to determine which of the diseases specifically listed will have presumptions of service connection established for them, the legislation includes a provision for the administrator, during the initial rulemaking process and as the science moves forward over the years—again, by regulation and based on medical and scientific evidence and resolving doubt in the claimant's favor—to add presumptions and standards, criteria, and guidelines related to additional diseases with reference to either type of exposure.

*Id.* at S13148–49.

In his remarks before the Senate, Senator Cranston specifically focused on the scientific expertise required to adjudicate claims based on alleged radiation exposure:

I want to note briefly why we have proposed to approach the compensation issue by addressing the process by which the VA handles claims for veterans rather than by taking the legislative approach advocated by some of the Congress by law designating specific diseases or disabilities as being presumptively service connected for VA compensation purposes. The approach reflected in [the Senate version] commended itself to me for two basic reasons. First, I believe that there is room for significant improvement in the way in which the VA compensation system handles claims based on agent orange or radiation exposure. Second, I am concerned that any approach requiring Congress to make decisions to include or not include in a list of presumptively service-connected disabilities various disabilities as to which there are fundamental differences of opinion among informed scientists is fraught with many difficulties and confronts the Congress with the task of making decisions that we simply are not well-equipped to make at present.

*Id.* at S13149.

## V. CONCLUSION

■ Based on concerns over the medical and scientific uncertainty regarding the effects of exposure to ionizing radiation and Agent Orange and recognizing that it was ill-equipped to make such scientific and medical findings itself, Congress, through the Act, directed that the Administrator (now Secretary), inter alia, enact and implement regulations setting forth uniform and consistent standards for the adjudication of radiation-based claims, consider (with the advice of the Advisory Committee) scientific studies on the relationship between specific diseases and radiation exposure, and adopt a list of specific diseases found to be radiogenic by such studies. The VA's interpretation that the list of radiogenic diseases is exclusive, i.e., that a veteran can only establish service connection on a direct basis based on radiation exposure if the disability is enumerated in that list, is reasonable in light of the expressed goals of both the Senate and the House in enacting the Act to address the overwhelming medical and scientific uncertainty surrounding such claims and to promote uniformity and consistency in the adjudication of radiation exposure-based claims.

Accordingly, the Court defers to the Agency's reasonable interpretation that a veteran may not establish direct service connection, based solely on radiation exposure, if the veteran's disability is not one of the enumerated "radiogenic diseases" under 38 C.F.R. § 3.311b(b)(2), and that the provisions of 38 C.F.R. §§ 3.303(d), 3.311b(h) do not afford an alternative basis for establishing direct service connection for a disease on the basis that the disease is the product of exposure to ionizing radiation. *See also Chinnock v. Turnage*, 1990 W.L. 200126 (E.D.Cal.1990) (noting that an alternative interpretation of paragraph (h) would be "inconsistent with the express language of the exclusive listing, which provides that radiogenic diseases include 'only' the diseases listed."). If Congress has an interpretation of the statutes and regulations dealing with service connection for radiation-based claims which is different from that advanced by the Secretary, it is, of course, free to alter, through appropriate legislation, what the Court has done. *See, e.g., Westfall v. Erwin*, 484 U.S. 292,

299, 108 S.Ct. 580, 585, 98 L.Ed.2d 619 (1988); *Ankenbrandt v. Richards,* — U.S. —, —, 112 S.Ct. 2206, 2207, 119 L.Ed.2d 468 (1992).

■ The Court's holding today does not completely foreclose a radiation-exposed veteran from establishing service connection on a direct basis. Rather, pursuant to 38 C.F.R. §§ 3.303(d), 3.311b(h), a veteran may still attempt to establish service connection on a direct basis; in so doing, however, the veteran must demonstrate that the disability was related to active service, i.e., that the disability in question was either incurred in or aggravated during the period of active service—without regard to the alleged radiation exposure.

■ Furthermore, independent of other legislation, the Administrative Procedure Act (APA) provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). *See also Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990) (noting that the VA, as a matter of policy, has voluntarily adopted the provisions of the APA). The APA also requires "prompt notice" in the event an agency denies such a petition and, where the reason for the denial is not self-explanatory, directs that the "notice shall be accompanied by a brief statement of the grounds for the denial." 5 U.S.C. § 555(e); *see also Ass'n of Investment Brokers v. Securities and Exchange Comm'n,* 676 F.2d 857, 864 (D.C.Cir.1982). An agency's refusal to engage in requested rulemaking normally will be subject to judicial review. *See, e.g., Environmental Defense Fund v. Reilly,* 909 F.2d 1497, 1504 (D.C.Cir.1990); *Ass'n of Investment Brokers,* 676 F.2d at 864. Accordingly, the Court's holding today does not prevent a veteran from petitioning the VA to issue a new rule or amend the existing rules to add a disease or condition to the list of radiogenic diseases.

■ Since neutropenia is not one of the recognized "radiogenic diseases" set forth in 38 C.F.R. § 3.311b(b)(2), appellant was precluded from establishing service connection on a direct basis based solely on his alleged exposure to ionizing radiation. Unlike the recognized "radiogenic diseases" which, by regulation, are granted a presumption period, neutropenia has no presumption period. 38 U.S.C. § 1110. In denying the appellant's claim for service connection for neutropenia in its January 1991 decision, the BVA found that appellant's submitted service medical records revealed no sign or symptom of bone marrow dysfunction or radiation illness during service, and that neutropenia was not shown until July 1988. *Combee,* BVA 91–01899, at 4. The Board also found that based upon its review of the entire claim file, there was no evidence that the veteran suffers from leukemia or a malignancy for which presumptive service connection would be warranted under the provisions of 38 U.S.C. § 1112(c) and that neutropenia is not a disease entitled to presumptive service connection under that statute. *Id.* at 5.

■ Under 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)), findings of material fact by the BVA may be set aside only if such findings are found to be "clearly erroneous." *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert,* 1 Vet.App. at 53. Based on the foregoing analysis, the Court finds that there is a plausible basis in the record for Board's denial of service connection for appellant's neutropenia.

Moreover, although the Board, in its January 1991 decision, failed to analyze appellant's claim under the provisions of 38 C.F.R. § 3.311b, the Board addressed this

issue in its earlier October 1988 decision, and such error is harmless given the Board's ultimate denial of appellant's claim. *Thompson v. Derwinski,* 1 Vet. App. 251, 254 (1991). Accordingly, the Board's denial of service connection for neutropenia, based on exposure to ionizing radiation, was made in full accordance with applicable laws and regulations, and that decision is AFFIRMED.