**Gertrude G. WALLS, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–210.**

United States Court of Veterans Appeals.

April 23, 1993.

Rick Surratt (non-attorney practitioner), was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Adam K. Llewellyn, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Gertrude G. Walls, the veteran's widow, appeals from an October 19, 1990, Board of Veterans' Appeals (BVA or Board) decision

which denied her claim for service connection for the cause of her husband's death due to exposure to ionizing radiation. The Court has jurisdiction of the case under 38 U.S.C.A. § 7252(a) (West 1991). For the reasons noted in this opinion, we affirm the decision of the BVA.

### FACTS

The veteran served in the United States Army from April 1944 to April 1946. R. at 1. The record reflects that in December 1976, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) rating board denied the veteran's claim for service connection for, inter alia, colon cancer. R. at 22.

The veteran died in 1979, and a copy of his death certificate in the record shows the cause of death as "sepsis due to lymphoma." R. at 104. Sepsis is "a toxic condition resulting from the spread of bacteria or their products from a focus of infection." WEBSTER'S MEDICAL DESK DICTIONARY 648 (1986) [hereinafter WEBSTER'S]. Lymphoma is "a usu[ally] malignant tumor of lymphoid tissue." WEBSTER'S at 400.

In October 1988, the veteran's widow wrote to the VA requesting compensation for the veteran's death and claiming it was caused by exposure to radiation in occupied Japan. R. at 105. She enclosed documents with her letter, including a "Separation Qualification Record" which shows that the veteran

[s]erved with the 24th Infantry Division in the Asiatic–Pacific Theater of Operation for 16 months. Was in charge of the dispatching of 22 military motor vehicles in a motor pool. Assigned the trucks to drivers and made out trip tickets. Saw that the trucks were maintained and kept in good condition. Drove all types of trucks to 2½ tons.

R. at 111.

On January 26, 1989, an RO rating board denied Mrs. Walls' claim, stating,

S[ervice] m[edical] r[ecords] are completely negative for complaint, treatment or diagnosis of the fatal condition. We note from the record that the veteran did suffer from malaria and syphilis in ser-

vice but we find no way to relate these conditions to the fatal lymphoma. We note that during the veteran's lifetime, s[ervice] c[onnection] was denied for arthritis, stomach ulcer, prostatitis, defective vision, cancer of the colon and jungle rot which the veteran felt was secondary to his s[ervice] c[onnected] malaria.

R. at 121. The rating board did not mention Mrs. Walls' claim that the veteran's lymphoma was caused by radiation exposure in service. *Id.*

On February 24, 1989, the RO received correspondence from Mrs. Walls to Senator John Warner, forwarded from the Senator, who "request[ed] the status of the attached communication." R. at 124. On March 1, 1989, the RO issued a deferred rating decision with an instruction to "[d]evelop [the case] for radiation exposure." R. at 132. On March 29, 1989, the RO adjudication officer wrote to the Defense Nuclear Agency for

confirm[ation of] the deceased veteran's presence in the performance of official military duties within ten miles of the city limits of either Hiroshima or Nagasaki, Japan, or other official military support activities of the army of occupation which would have placed him at the location of the detonations of nuclear weapons at either Hiroshima or Nagasaki.

R. at 133. In addition, the adjudication officer noted,

The evidence indicates the veteran served with the Headquarters Company, Motor Pool, of the Third Battalion of the 34th Regiment. During his lifetime, he indicated he was stationed at Atami Air Base in Japan from October 1945 to April 1946. His military occupation and rank at that time was Tec 5, Dispatcher–Driver, Light Truck.

*Id.*

On March 31, 1989, the RO received a Notice of Disagreement from Mrs. Walls with attached morning reports which appear to show that the veteran was in Takuma, Shikoku, Himeji, and Honshu, Japan, in January and March 1946. R. at 128–31.

On May 5, 1989, the Defense Nuclear Agency responded to the RO adjudication officer's request for information about the veteran's military activities. R. at 134–35. The letter stated, inter alia,

Mr. Walls' service record could not be found at its storage location at the National Personnel Records Center in St. Louis, Missouri; it was apparently destroyed in the fire that occurred there in 1973. Because this primary source is unavailable, a search of alternate unit records was required to provide an outline of Mr. Walls' service with the occupation forces in Japan.

According to Army historical records, Mr. Walls served with Headquarters Company, 3rd Battalion, 34th infantry Regiment (Hq Co, 3rd Bn, 34th Inf) during the American occupation of Japan. Arriving from the Philippines, this unit landed at Matsuyama (about 35 miles from Hiroshima and 180 miles from Nagasaki) on October 22, 1945. The unit remained there until December 11, 1945, when it moved to Takumu (about 70 miles from Hiroshima and 240 miles from Nagasaki). On January 20, 1946, Hq Co, 3rd Bn, 34th Inf departed Takumu and moved to Himeji (approximately 130 miles from Hiroshima and 300 miles from Nagasaki). The unit was still stationed there on March 23, 1946, when Mr. Walls was transferred to the 4th Replacement Depot at Tokyo for return to the continental United States.

R. at 134.

The RO issued a Statement of the Case dated May 31, 1989. R. at 137–43. On June 1, 1989, the RO issued a rating decision denying service connection for the cause of the veteran's death based on radiation exposure. The rating board noted,

The veteran's unit was involved in the occupation of Japan. However, his unit was never assigned to Hiroshima or Nagasaki and was never less than 35 miles from either city. We have no evidence that the veteran himself was assigned to any temporary duty in either Hiroshima or Nagasaki. The widow has submitted some morning records showing temporary duty. He was assigned to four days

of temporary duty on [January 11, 1946,] and to an unknown period of temporary duty on [March 22, 1946]. He was transferred to a replacement depot on [March 23, 1946] in Tokyo for return to the United States.

The evidence does not establish that the veteran was exposed to ionizing radiation as a result of participating in the occupation of Hiroshima or Nagasaki. There is no evidence that he had official military duties within ten miles of the city. Entitlement is not established under either 38 C.F.R. [§] 3.311[b] or Public Law 100–321.

R. at 144. The RO issued a Supplemental Statement of the Case dated June 19, 1989. R. at 145–48.

On August 31, 1989, the RO received Mrs. Walls' VA Form 1–9 substantive appeal, on which she stated, inter alia, "Rules of regulation in the Federal Register states [sic] that if information of service records are [sic] incomplete that the [v]eteran or dependent will be given the benefit of the doubt (copy enclosed)." R. at 149–50. Mrs. Walls enclosed a copy of 38 C.F.R. § 3.311b from the Federal Register on which she highlighted, inter alia, § 3.311b(a)(4)(i) which provides, "If military records do not establish presence at or absence from a site at which exposure to radiation is claimed to have occurred, the veteran's presence at the site will be conceded." 38 C.F.R. § 3.311b(a)(4)(i) (1992); R. at 153.

On September 25, 1990, Mrs. Walls testified at a hearing before the BVA in Washington, D.C. R. at 163–70. At the hearing Mrs. Walls' representative noted that the record reflected that Mr. Walls had been within thirty-five miles of Hiroshima, and he argued that, given that Mr. Walls was a truck driver he probably did come within the ten-mile radius of city limits established by regulation as constituting "occupation of Hiroshima or Nagasaki." R. at 170; see 38 C.F.R. § 3.309(d)(4)(vi) (1992). Mrs. Walls testified that the veteran did drive supplies into Hiroshima:

[T]he mileage there I wouldn't know but he did go into Hiroshima, that I did know. He did take supplies. Now nobody—he was not stationed there but he did drive and take supplies in there and there were other little towns in that area that he did go into and take supplies and sometimes, he would·take a man or two with him in driving in the truck.

R. at 166.

In the DISCUSSION AND EVALUATION section of its October 19, 1990, decision, the BVA stated,

The record indicates that the veteran died of lymphoma. It is apparent that this disorder began many years after service. Lymphoma is not a radiogenic disease as defined by 38 C.F.R. [§] 3.311b, but it is one of the malignant disorders listed in recently amended [38 U.S.C.A. § 1112 (West 1991)]. The question thus becomes whether the veteran was engaged in radiation-risk activity as defined by the applicable law and regulations. Following a review of the entire evidence of record, the Board concludes that he was not. We specifically note that, given his locations in Japan after the atomic bombings, he was not a member of the occupation of Hiroshima or Nagasaki during the period of time in ·question. Accordingly, the Board finds that service connection for the cause of the veteran's death is not warranted.

*Gertrude G. Walls, in the Case of Hursc-. hell G. Walls*, BVA 90–35102, at 5–6 (Oct. 19, 1990). Appellant filed a timely appeal with this Court.

## ANALYSIS

**A. Entitlement to service connection for cause of death under 38 C.F.R. § 3.311b.**

In *Combee v. Principi*, 4 Vet.App. 78 (1993), this Court considered "whether 38 U.S.C.A. ˙§ 1112 (West 1991) and 38 C.F.R. § 3.311b (1992), which provide presumptive service connection for a radiation-exposed veteran who manifests certain disabilities, preclude the establishment of direct service connection based on radiation exposure for diseases not enumerated in

the referenced statute and regulation." *Combee*, 4 Vet.App. at 80. The Court held in *Combee* that

[t]he VA's interpretation that the list of radiogenic diseases is exclusive, i.e., that a veteran can only establish service connection on a direct basis based on radiation exposure if the disability is enumerated in that list, is reasonable in light of the expressed goals of both the Senate and the House in enacting the Act to address the overwhelming medical and scientific uncertainty surrounding such claims and to promote uniformity and consistency in the adjudication of radiation exposure-based claims.

*Id.* at 94.

The BVA was correct in stating, "Lymphoma is not a radiogenic disease as defined by 38 C.F.R. [§] 3.311b" (*Walls*, BVA 90–35102, at 5), and, given this Court's holding in *Combee*, the Board was also correct in denying service connection for the veteran's cause of death under § 3.311b on that basis. Therefore, the Court holds that the Board did not err in denying service connection for the veteran's cause of death under 38 C.F.R. § 3.311b.

In her brief, appellant argues that the presence of information in the record that the veteran suffered from colon cancer, a recognized radiogenic disease under 38 C.F.R. § 3.311b, created a duty on the part of the VA and BVA to further develop the record to determine whether colon cancer materially contributed to the cause of death, thereby warranting service connection under 38 C.F.R. § 3.312(c). Appellant's Br. at 15–17. The BVA is obligated to consider all issues reasonably raised by the record (*see Myers v. Derwinski*, 1 Vet. App. 127, 129–30 (1991); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *Mingo v. Derwinski*, 2 Vet.App. 51, 54 (1992)). In this case, the record does show that the veteran was diagnosed with colon cancer in 1976 (R. at 13, 37, 79–80, 86), but there is no evidence linking colon cancer with his death in 1979. The death certificate contains a block for listing "other significant conditions contributing to death but not related to the terminal disease condition" but that block is blank. R. at 104, 114.

Therefore, the Court holds that in this case a claim for service connection for colon cancer as a contributory cause of death was not "reasonably raised," even given a "liberal reading" of the record (*see Mingo*, 2 Vet.App. at 54), and the BVA did not err in not considering this issue.

## B. Entitlement to service connection for cause of death under 38 U.S.C.A. § 1112 (West 1991).

■ The Board correctly noted that lymphoma is "one of the malignant disorders listed in ... [38 U.S.C.A. § 1112 (West 1991)]" (*Walls*, BVA 90–35102, at 5), but decided that service connection could not be granted under this statute because "the veteran was [not] engaged in radiation-risk activity as defined by the applicable law and regulations." *Walls*, BVA 90–35102, at 5. In this regard, the Board specifically noted that "given [the veteran's] locations in Japan after the atomic bombings, he was not a member of the occupation of Hiroshima or Nagasaki during the period of time in question." *Id.*

Section 1112 provides in pertinent part as follows:

> (c)(1) For the purposes of section 1110 of this title, and subject to the provisions of section 1113 of this title, a disease specified in paragraph (2) of this subsection becoming manifest in a radiation-exposed veteran shall be considered to have been incurred in or aggravated during active military, naval, or air service, notwithstanding that there is no record of evidence of such disease during a period of such service.

38 U.S.C.A. § 1112 (West 1991), *as amended by* Veterans' Radiation Exposure Amendments of 1992, Pub.L. No. 102–578, 106 Stat. 4774 (1992). Lymphomas (except Hodgkin's disease) are specified in paragraph (2)(J) of § 1112. In addition, the statute provides that the term "radiation-risk activity" means, inter alia, "The occupation of Hiroshima or Nagasaki, Japan, by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946." 38 U.S.C.A. § 1112(c)(3)(B)(ii).

Under the authority of § 1112, the Secretary has promulgated regulations, among them 38 C.F.R. § 3.309(d)(4)(vi) which states,

> The term "occupation of Hiroshima or Nagasaki, Japan, by United States forces" means official military duties within 10 miles of the city limits of either Hiroshima or Nagasaki, Japan, which were required to perform or support military occupation functions such as occupation of territory, control of the population, stabilization of the government, demilitarization of the Japanese military, rehabilitation of the infrastructure or deactivation and conversion of war plants or materials.

38 C.F.R. § 3.309(d)(4)(vi). Appellant argues that, because the veteran's military vocation as a truck driver involved travel into Hiroshima to deliver supplies, the evidence establishes that the veteran was within ten miles of Hiroshima. Appellant's Br. at 12–13. The Court notes that the veteran's widow testified that the veteran made trips into Hiroshima (R. at 166) but that service records reflect that the closest that his unit had been to the city was thirty-five miles from Hiroshima. R. at 134.

The BVA's determination that the veteran was not a member of the occupation forces of Hiroshima or Nagasaki is a finding of fact. This Court must affirm the factual findings of the BVA unless the determinations are "clearly erroneous." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). "[I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *Id.* at 53. The Court holds that in this case there is a 'plausible' basis in the record for the BVA's determination. Accordingly, we hold that that determination was not clearly erroneous.

## CONCLUSION

For the reasons stated above, the October 19, 1990, decision of the BVA is AFFIRMED.