Citation Nr: 1719267 
Decision Date: 05/23/17 Archive Date: 06/06/17

DOCKET NO. 12-33 038 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUE

Entitlement to service connection for congestive heart failure, to include as due to herbicide exposure and exposure to contaminated water at Camp Lejeune. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

S. Anwar, Associate Counsel






INTRODUCTION

The Veteran had active service from February 1969 to February 1971.

This matter comes before the Board of Veterans' Appeals (Board) from a September 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. During the course of the appeal, the Veteran's claim was transferred to the RO in Seattle, Washington, and that RO has jurisdiction over the claim on appeal.

The case was remanded in July 2015 for evidentiary development and for an addendum medical opinion regarding the etiology of the Veteran's congestive heart failure (CHF). All actions ordered by the remand have been accomplished and the case is ready for appellate review.

Pursuant to VA's duties to notify and assist the Veteran, VA advised the claimant 
how to substantiate an application for benefits, obtained all relevant and available evidence and conducted any appropriate medical inquiry. The appeal is ready for appellate review. This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing system. 


FINDING OF FACT

The Veteran's current heart disorder was not caused or aggravated by his military service. 


CONCLUSION OF LAW

The criteria for service connection for congestive heart failure have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2016).

REASONS AND BASES FOR FINDING AND CONCLUSION

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. 
§ 3.303(a). "To establish a right to compensation for a present disability, a Veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service' - the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d); see Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

With regards to the second and third elements of service connection, any veteran who, during active military service, served in the Republic of Vietnam during the period beginning in January 1962 and ending in May 1975, is presumed to have been exposed to herbicide agents. 38 C.F.R. §§ 3.307, 3.309. The list of diseases that are deemed associated with herbicide exposure includes ischemic heart disease. However, the Veteran in this matter did not serve in Vietnam, as he has conceded. See 38 C.F.R. § 3.307 (a)(6)(ii). 

The United Stated Court of Appeals for the Federal Circuit held that when a veteran is found not entitled to a regulatory presumption of service connection for a disability the claim must be reviewed to determine whether service connection can be established on a direct basis. Combee v. Brown, 34 F.3d 1039, 1043-1044 (Fed.Cir.1994), rev'g in part Combee v. Principi, 4 Vet. App. 78 (1993). Therefore, the Board must not only determine whether a veteran has a disability which is recognized by VA as being etiologically related to exposure to herbicide agents that were used in Vietnam, see 38 C.F.R. § 3.309(e), but must also determine whether his current disability is the result of active service under 38 U.S.C.A. § 1110 and 38 C.F.R. § 3.303 (d). This determination may include actual exposure to herbicides as opposed to presumed exposure.

In addition to the herbicide exposure presumption, VA has recognized that veterans who served at Camp Lejeune for no less than 30 days, either consecutive or non-consecutive, between August 1, 1953 and December 31, 1987, have potential exposure to contaminants present in the base water supply prior to 1988. Honoring America's Appellants and Caring for Camp Lejeune Families Act of 2012, § 505(a), Pub L. 112-154, 126 Stat. 1165 (August 6, 2012) ((codified as amended at 38 U.S.C.A. § 5103A (b)(2)(B) (hereinafter "Camp Lejeune Act")). Under this law, certain diseases shall be presumed to be the result of exposure to Camp Lejeune base water and may be service-connected provided additional requirements are satisfied.

As amended, 38 C.F.R. §§ 3.307 and 3.309 include eight diseases that are presumed to be the result of exposure to Camp Lejeune base water, including: adult leukemia, aplastic anemia and other myelodysplastic syndromes, bladder, kidney or liver cancers, multiple myeloma, non-Hodgkin's lymphoma, and Parkinson's disease. 
Congestive heart disease is not among the disorders that are presumptively linked to contaminated water. 

For those diseases not presumptively linked to contaminated water, service connection for any disability claimed to have resulted from contaminated water exposure at Camp Lejeune requires sufficient medical evidence that the disability is related to that exposure. That medical evidence will generally come from a competent and qualified medical examiner that provides an opinion establishing a rational nexus or link between the claimed disability and the exposure. Some diseases have been scientifically associated to a greater or lesser extent with exposure to the chemical contaminants in the water at Camp Lejeune, however that does not mean that service connection can automatically be established for a Camp Lejeune Appellant claiming one of these diseases. Competent medical opinion must determine whether it is at least as likely as not that the claimed disease or disability has resulted from the contaminant exposure at Camp Lejeune. Sufficient medical evidence to establish the required nexus may also come from a private physician or other competent private medical authority.

In deciding an appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether a veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465, 469. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303. Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, 492 F.3d 1372, 1377.

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104(a). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

The Veteran contends an EKG reading demonstrating his heart was beating too fast indicated the onset of his current heart condition. There are no other complaints, diagnoses or treatments for a heart condition in service. Received prior to the submission of the claim, a March 1987 report of VA examination contains a note indicating a "general review of systems" revealed no cardiovascular symptoms. The Veteran was then noted to be "slightly obese" but "otherwise healthy looking." 

An August 2015 VA examiner reviewed the Veteran's entire case file. He opined that it is less likely than not that the Veteran's in-service EKG result indicated the onset of his current heart condition. The examiner noted the EKG indicated the Veteran's heart was beating faster than normal. The Veteran's current pacemaker was inserted because the Veteran's heart rate was too slow. There is no medical evidence suggesting a link between an EKG demonstrating a fast heart rate as indicative of the onset of congestive heart failure. 

The Veteran also contends that he was exposed to Agent Orange while stationed at Camp Pendleton because his duties included handling the personal effects of soldiers killed or missing in action in Vietnam. At his hearing, the Veteran explained he inventoried the clothes, shoes and other personal effects of deceased Vietnam veterans - which exposed him to residual herbicide because these veterans, having just served in Vietnam, were wearing clothes contaminated by Agent Orange when they died. 

Provisions 38 C.F.R. § 3.307 and § 3.309 require service or visitation in the Republic of Vietnam or the waterways surrounding Vietnam in order for the presumptive exposure to Agent Orange to apply. The record indicates the Veteran did not serve in the Republic of Vietnam. In addition, exposure to Agent Orange via clothing is not a documented, accepted or recognized exposure that triggers the presumptive service connection provisions. 

The Veteran also contends his heart condition was caused by his exposure to contaminated water while stationed at Camp Lejeune. Personnel records confirm the Veteran was stationed at Camp Lejeune during the presumptive period.

However, the Veteran's heart disorder is not listed as one of the eight diseases for which presumptive nexus is allowed. Regarding direct service connection for exposure to contaminated water, the September 2011 examiner diagnosed the Veteran with acute, subacute, or old myocardial infarction; coronary artery disease; heart block; implanted cardiac pacemaker; and CHF. The examiner opined ischemic cardiomyopathy caused the Veteran's heart condition, including his CHF. The examiner noted that medical literature describing the potential health hazards caused by exposure to the chemical contaminants in the water supply at Camp Lejeune do not list CHF or cardiomyopathy as one of the diseased conditions. No medical evidence exists which notes that the contaminants found in the base water at Camp Lejeune cause cardiomyopathy or CHF. 

The August 2015 examiner also opined that there is no documented medical evidence that heart disease is related in any way to this particular environmental exposure. The examiner noted "the fifteen documented conditions are all cancers, kidney failures and a connective tissue disease." 

The preponderance of the evidence is against the Veteran's claim for service connection. Medical examiners have reviewed the Veteran's in-service EKG and have opined he did not demonstrate the onset of a heart disease while in service. In addition, the Veteran does not meet the threshold requirements for presumptive or direct exposure to Agent Orange because he was not "boots on the ground" in Vietnam and was not exposed to Agent Orange through the clothing of deceased veterans. Also, the Veteran's disease does not trigger the presumptive provisions relating to exposure to contaminated water while at Camp Lejeune. Finally, there is no medical evidence to suggest that his heart condition is directly caused by the contaminants found in Camp Lejeune's base water supply. 

The Veteran has continuously indicated his heart condition is related to his service duties and exposure to herbicides and contaminants. The Veteran is competent to report observable symptomatology of his condition and to relate a contemporaneous medical diagnosis. See Layno, 6 Vet. App. 465, 469; see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, while the Veteran has attempted to establish a nexus through his own lay assertions and those of others, the Veteran is not competent to offer opinions as to the etiology of his current heart condition. See Jandreau, 492 F.3d 1372, 1377 n.4; Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). Congestive heart failure requires specialized training for determinations as to diagnosis and causation, and is therefore not susceptible to lay opinions on etiology. Thus, the Veteran is not competent to render such a nexus opinion or attempt to present lay assertions to establish a nexus between his current diagnosis and service.

The Veteran's certified physician's assistant provided a medical nexus opinion indicating "if [the Veteran] helped with combat casualties brought to his ship, it is highly likely he was exposed to Agent Orange" and that it is "very possible" this exposure contributed to his current health condition. This opinion is based on the Veteran's unsubstantiated history that is inconsistent with his own testimony and military records. Sanchez-Benitez v. West, 13 Vet. App. 282, 286 (1999) (holding that a medical evaluation that is merely a recitation of a veteran's self-reported and unsubstantiated history has no probative value). 

The Veteran's duties did not include exposure to combat veterans aboard a ship in Vietnam. Moreover, even were the Board to assume the credibility of the Veteran's account of inventorying the clothing of deceased veterans in Camp Pendleton, California, (which it does not) it would be a matter of speculation to ascertain the amount of herbicide exposure in this circumstance. Fagan v. Shinseki, 573 F.3d 1282, 1286 (Fed. Cir. 2009) (noting that the benefit of the doubt standard in section 5107(b) is not applicable based on pure speculation or remote possibility).

 The physician's assistant does not have the expertise to opine on the factual question of whether the Veteran was exposed to Agent Orange, nor the amount of such exposure even if assumed. The physician's conclusory statement that it is "very possible" that exposure to Agent Orange caused the Veteran's heart condition is not probative. See Stefl v. Nicholson, 21 Vet. App. 120, 124-125 (2007). The VA examiners' opinions are more probative regarding the etiology of the Veteran's condition because they are evidence-based and reflect the current state of medical knowledge. 


ORDER

Service connection for congestive heart failure is denied.




____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs